UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. YOLANDA ARMSTRONG-YOUNG,<br><br>Plaintiffs,<br><br>v.<br><br>CARELINK HOSPICE SERVICES, INC.,<br><br>Defendant. | Case No. 15-cv-04095-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

Qui Tam plaintiff Yolanda Armstrong-Young alleges that defendant Carelink Hospice Services, Inc. ("Carelink") violated the federal False Claims Act by claiming reimbursements from Medicare on behalf of patients who were not eligible to have their hospice care covered by the Government. On her third attempt, she has still not alleged sufficient facts to meet Federal Rule of Civil Procedure 9(b)'s heightened requirements to state a claim for fraud. Accordingly, I **GRANT** Carelink's motion to dismiss without leave to amend.

## BACKGROUND

Armstrong-Young was employed by Carelink from approximately April 2015 to June 2015. Second Amended Complaint ("SAC") [Dkt. No. 30] ¶ 11. Carelink is a California corporation in the business of providing hospice care to Medicare participants. *Id*. ¶¶ 12-13. Armstrong-Young filed suit on behalf of the United States of America alleging that Carelink violated 31 U.S.C. § 3729(a)(1)(A), the federal False Claims Act ("FCA"), because it claimed reimbursements from Medicare on behalf of ineligible patients. Her allegations are taken as true for the purposes of evaluating Carelink's motion to dismiss.

Since 1982, Medicare Part A has included a hospice benefit for terminally-ill patients. *Id*.

¶ 18. Terminally ill is defined as having a life expectancy of six months or less. *Id*. ¶ 22. In order for a patient to be admitted into hospice care there must be a certification of terminal illness from both the individual's attending physician, if he or she has an attending physician, and the medical director of the hospice or a physician-member of the hospice interdisciplinary group. *Id*. ¶ 46. An interdisciplinary group consists of, at minimum, a physician, a registered nurse, a social worker, and a pastor or other counselor. *Id*. ¶ 47. Hospice providers must submit a CMS-1450 form to be reimbursed by Medicare via the Centers for Medicare and Medicaid Services ("CMS"). *Id*. ¶¶ 56-58. By submitting a CMS-1450 form, a hospice provider certifies to the CMS that it is entitled to reimbursement. *Id.* ¶¶ 59-60.

Without identifying particular claims for reimbursement or patients, Armstrong-Young alleges that Carelink violated the FCA when it sought reimbursement for patients who it knew were not terminally-ill. *Id*. ¶¶ 68-75. She also describes a number of violations of Medicare's rules, policies, procedures, and regulations that are unrelated to her sole FCA claim. *Id*. ¶¶ 76-81.

In my June 2018 Order, I dismissed Armstrong-Young's First Amended Complaint with leave to amend. Dkt. No. 28. I stated that she had not alleged enough detail to give notice of particular misconduct that would constitute fraud and support an implied false certification claim for hospice care under Medicare. *Id.*

Armstrong-Young filed the SAC on July 13, 2018. Dkt. No. 29. Carelink again moves to dismiss the FCA claim for failure to allege a FCA cause of action with the required particularity required by Federal Rule of Civil Procedure 9(b) and because Carelink is not authorized to designate patients for hospice care and therefore cannot make false claims.[1] Dkt. No. 30. The United States of America (the real party in interest) has declined to intervene in this case. Dkt. No. 15.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

---

[1] Given that I am dismissing the SAC on Rule 9(b) grounds, I will not address Carelink's alternative argument.

dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"Because they involve allegations of fraud, qui tam actions under the False Claims Act must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead generally, or in accordance with Rule 8." *Corinthian Colls.*, 655 F.3d at 992.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I. THE FEDERAL RULE OF CIVIL PROCEDURE 9(B) HEIGHTENED PLEADING STANDARD FOR FRAUD**

Carelink argues that Armstrong-Young's FCA claim must be dismissed because the SAC fails to allege fraudulent conduct with the degree of specificity required by Federal Rule of Civil Procedure 9(b).

3

The FCA imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." *United States, et al. v. Stephens Inst.*, No. 17-15111, 2018 WL 4038194, at *3 (9th Cir. Aug. 24, 2018) (citing 31 U.S.C. § 3729(a)(1)(A)). In order to state a FCA claim, plaintiffs must allege that there was a "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). The falsity requirement may be satisfied by either express false certification or implied false certification. The key difference between the two is whether the entity seeking payment must certify that it has complied with the applicable law, rule, or regulation each time a claim is made, or if that certification is made initially and later implied with each subsequent claim. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Express false certification occurs when an entity seeking payment from the government falsely certifies compliance with a law, rule, or regulation each time a claim is submitted. *Id*. Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, does not in fact comply, and then submits a claim for payment.[2] *Id.* Under both theories, "[i]t is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *Id.* at 998 (*quoting U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)).

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). As applied here, "[t]o survive a Rule 9(b) motion to dismiss, a

---

[2] In the wake of the United States Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, the requirements to state an FCA claim under a theory of implied false certification has become less clear in the Ninth Circuit. *See generally Stephens Inst.*, No. 17-15111, 2018 WL 4038194, at *4-5 (citing 136 S.Ct. 1989 (2016)). It is unclear if the standard for implied false certification in *Ebeid* remains viable. *See id.* at *4. This uncertainty does not preclude me from analyzing the sufficiency of Armstrong-Young's allegations under Federal Rule of Civil Procedure 9(b) as *Ebeid* articulates a lower standard for falsity than *Escobar*. If Armstrong-Young cannot meet the *Ebeid* standard for falsity, she will also not be able to meet the more rigorous standard in *Escobar*.

4

complaint alleging implied false certification must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Ebeid*, 616 F.3d at 998.

Armstrong-Young seeks to bring an implied false certification claim. She relies on general allegations that Carelink presented false claims and pressured its employees to maximize the number of patient admissions or eligibility recertifications without care to whether the patients were actually eligible for Medicare-provided hospice care. SAC ¶¶ 68, 70.

Armstrong-Young attached a list of four patients about whom she states she raised eligibility concerns. *Id.* ¶ 81, Ex. D. She alleges only that she "expressed concern to senior Carelink Management regarding their eligibility for Medicare hospice benefits eligibility and/or compliance with Medicare-required treatments and protocols." SAC ¶ 81. This bare allegation does not describe the nature of Armstrong-Young's concerns or her basis for believing that the four individuals in Exhibit D were not eligible for Medicare reimbursements for hospice care. She does not identify any reimbursements from Medicare made on behalf of the four individuals.

Armstrong-Young states that another social worker, Arnetta Lone Chief, had "personal knowledge of two other employees, Regina and Myla Thong, engaged in misrepresentation of facts in reporting about Carelink patient care." SAC ¶ 79. She does not allege the nature of this misrepresentation, who the alleged misrepresentation was reported to, or why it is relevant to her claim.

She also asserts a number of facts regarding violations of Medicare rules, policies, procedures, and regulations unrelated to any particular false claim. These include, among other things, that she was asked to sign interdisciplinary group meeting notes stating that she had provided social work services to patients she had not seen, that the staff lacked a permanent nutritionist, and that there were insufficient visits by registered nurses. *Id.* ¶ 77. She contends that Carelink retaliated against her for voicing her concern about its practices and that another employee shared her concerns. *Id.* ¶¶ 78-80.

5

Armstrong-Young has failed to meet the particularity requirements for alleging fraud under Federal Rule of Civil Procedure 9(b). Her allegations, individually or taken together, fail to identify with particularity what "claims" Carelink submitted that were "impliedly" false as required by Federal Rule of Civil Procedure 9(b). *Vess*, 317 F.3d at 1106. They do not provide a reasonable basis for me to infer that claims had been submitted on behalf of any particular patient. *Ebeid*, 616 F.3d at 998. Allegations in a complaint may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to effectively defend itself. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The SAC does not sufficiently allege the "who, what, when, where, and how" of the asserted implied false certification claim to allow Carelink to defend itself.

In opposition, Armstrong-Young argues that her case is similar to *United States, et al. v. Stephens Inst.*, No. 17-15111, 2018 WL 4038194 (9th Cir. Aug. 24, 2018). In *Stephens*, the Second Amended Complaint stated a FCA claim for implied false certification through detailed factual allegations describing how the defendant, a private, for-profit higher education institution, violated the Title IV of the Federal Higher Education Act. *See* Second Amended Complaint, United States, et al. v. Stephens Institute, No. 09-5966-PJH (ND Cal. Nov. 8, 2011), Dkt. No. 18. Universities are prohibited under Title IV from providing "any commission, bonus, or other incentive payment based . . . on success in securing enrollments of financial aid to any persons . . . engaged in any student recruiting or admissions activities." *Id.* ¶ 20. The *Stephens* plaintiffs alleged specific and detailed instances of a violation of this prohibition, such as defendant's agents informing a plaintiff-relator that she would "receive an $8,000 salary increase if she met her recruitment goal of 65 students, if she achieved 125% of the goal she would receive $10,000 salary increase and if she achieved 150% of that goal she would receive $15,000 salary increase." *Id.* ¶ 26, 27, 30. The *Stephens* plaintiffs bolstered their allegations with emails between the plaintiffs' and defendant's agents. *Id.* Ex. A-C, E. Under this scheme, the Ninth Circuit found that the plaintiffs had sufficiently alleged an implied false certification cause of action. *Stephens*, 2018 WL 4038194 at *8.

The SAC here is clearly distinguishable. Armstrong-Young has failed to allege a

6

1 fraudulent scheme by Carelink in a comparable level of detail as the *Stephens* plaintiffs. She

2 brings only conclusory allegations, such as that Carelink "knowingly and deliberately pressured

3 and encouraged all its employees, including physicians, nurses, social workers and support staff to

4 maximize the number of patient admissions and/or recertification of eligibility without care,

5 regards or attention to patients were eligible for Medicare hospice benefits," SAC ¶ 70, or that

6 "Carelink employed procedures designed to cause the admission and/or recertification of

7 eligibility of virtually every patient who applied for admission and/or continued hospice care,

8 regardless of the patients' eligibility for hospice care". *Id.* ¶ 71. These allegations do not

9 approach the level of detail provided by the plaintiffs in *Stephens,* or that is necessary to provide

10 sufficient notice to Carelink.

11 Armstrong-Young contends that Carelink misapplies the factual standard required for a

12 motion for summary judgement to a motion to dismiss. Opposition ("Oppo.") [Dkt. No. 37] at 1.

13 Federal Rule of Civil Procedure 9(b) controls, and it demands a higher level of specificity to

14 sufficiently allege a claim for fraud than is typically required of other claims and certainly more

15 than Armstrong-Young provides in the SAC.

16 Armstrong-Young also argues that Carelink necessarily made implied false certifications

17 when it sought reimbursement from CMS via a CMS-1450 form. *Id*. at 11-13. But she fails to

18 identify the submission of any particular CMS-1450 form or patient for whose benefit

19 reimbursement was sought. She does not allege that any CMS-1450 forms were submitted on

20 behalf of the four individuals identified in Exhibit D to the SAC.

21 Armstrong-Young cites *U.S. ex rel. Brown v. Celgene Corp.* for the proposition that falsity

22 may be alleged without providing details of a representative false claim as long as the plaintiff

23 alleges sufficient indicia that false claims were actually submitted. Oppo. at 12 (*citing* No. CV 10-

24 3165, 2014 WL 3605896, at *2 (C.D. Cal. July 10, 2014)). In *Celgene*, the plaintiff alleged that

25 defendant pharmaceutical company defrauded government-funded healthcare programs by

26 systematically promoting two particular drugs for non-reimbursable off-label uses and paying

27 illegal kickbacks to physicians. *Celgene*, WL 3605896, at *1. The *Celgene* plaintiff was able to

28 allege particular details of a scheme to submit false claims paired with reliable indicia that led to a

7

strong inference that claims were actually submitted. *Id.* In a 100-plus page complaint, the plaintiff described the fraudulent scheme as it was communicated to her by those perpetrating the fraud, that by the defendant's own estimates Medicare and Medicaid paid for the majority of the two drug prescriptions, that industry analysts estimate that "almost all" of defendant's sales were for off-label uses, and that the plaintiff never was trained to market the drugs on-label. *Id.* These facts made it easy for the court to infer that claims for non-reimbursable, off-label uses were submitted to Medicare and Medicaid. *Id.*

*Celgene* is distinguishable because no similar facts have been alleged in this case. Armstrong-Young has not provided anything close to the reliable indicia relied upon by the court in *Celgene* to show that false claims were submitted.

Armstrong-Young cites *Wool v. Tandem Computers Inc.*, *Deutsch v. Flannery*, and *U.S. ex rel. Lee v. SmithKline Beecham, Inc.* to support her request that Rule 9(b)'s particularity requirement should be relaxed in this case. Oppo. at 13 (*citing* 818 F.2d 1433, 1440 (9th Cir. 1987); F.2d 1361, 1366 (9th Cir. 1987); 245 F.3d 1048, 1052 (9th Cir. 2001)). *Wool* and *Flannery* both involved securities fraud claims, where the evidence of fraud was in the exclusive possession of the defendants. Securities fraud claims have different pleading requirements than FCA claims. In *SmithKline*, the court refused to relax Rule 9(b)'s particularity standard in a FCA case and stated that because the plaintiff had worked for the defendant for 20 years, it could not be fairly said that the information required was in the exclusive possession of the defendants. 245 F.3d at 1052. Simply because the court in *SmithKline* refused to relax Rule 9(b)'s requirement for a long-time employee does not mean that it would have done so for a short-term employee. The law is to the contrary, particularly where I cannot make a reasonable inference to leap from the facts alleged to find a plausible FCA claim.

Carelink's Motion to Dismiss is **GRANTED**. In my previous order dismissing the First Amended Complaint, I cautioned Armstrong-Young that she had not alleged enough detail to give notice of particular misconduct to support an implied false certification claim for hospice care under Medicare. She has again failed to provide enough detail. Her FCA claim is **DISMISSED WITH PREJUDICE.**

8

**CONCLUSION**

For the reasons outlined above, Carelink's Motion to Dismiss is **GRANTED**. Because Armstrong-Young has already been given leave to amend her FCA claim twice and it appears that further amendment would be futile, the FCA claim and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: October 1, 2018

William H. Orrick
United States District Judge